

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

SEP 1 8 2013

WRENCE K. BAERMAN, Clerk
UTICA

---

UNITED STATES OF AMERICA

    v.

MICHAEL LOMBARDO,

    Defendant.

---

Case No. 5:13-CR-344 (DNH)

Plea Agreement

---

The United States of America, by and through its counsel of record, the United States Attorney for the Northern District of New York, and defendant MICHAEL LOMBARDO (hereinafter "the defendant"), by and through the defendant's counsel of record, hereby enter into the following plea agreement pursuant to Rule 11(c)(1)(A) of the Federal Rules of Criminal Procedure:

1) **The Defendant's Obligations:**

    a) **Guilty Plea:** The defendant will waive indictment and plead guilty to a one-count information in Case No. 5:13-CR-344 (DNH) charging him with receiving child pornography in violation of Title 18, United States Code, Section 2252A(a)(2)(A).

    b) **Special Assessment:** The defendant will pay an assessment of $100 per count of conviction pursuant to 18 U.S.C. § 3013. The defendant agrees to deliver a check or money order to the Clerk of the Court in the amount of $100, payable to the U.S. District Court, at the time of sentencing.

    c) **Compliance with Other Terms of Agreement:** The defendant will comply in a timely manner with all of the terms of this plea agreement.

d) **Forfeiture:** The defendant will consent to entry of an order directing forfeiture to the United States of the property described in the Forfeiture Allegation in the Information described above, or to any substitute assets, or to a money judgment, all as more fully set out below:

1. Apple Laptop, Serial Number: COZF91XPDH2L

2. Apple Laptop, Serial Number:  W86250PDVWX

3. ASUS EEE Laptop, FCC Number:  MCQE0SNE785

4. Motorola Droid MSN: K566NL2FQZ

e) **Access to Records**: The defendant will provide any privacy waivers, consents, or releases requested by the United States Attorney's Office to access records to verify the defendant's financial disclosures.  The defendant authorizes the United States Attorney's Office to inspect and copy all financial documents and information provided by the defendant to the U.S. Probation Office.

2) <u>**The Government's Obligations:**</u>

a) **Non-prosecution for other offenses:** For so long as the defendant's guilty plea and the sentence remain in effect, the government will not seek other federal criminal charges against the defendant based on conduct described in the information in Case No 5:13-CR-344 (DNH) and/or in the paragraph of this agreement entitled "Factual Basis for Guilty Plea," occurring before the date on which the defendant signs this agreement.  This agreement does not prevent the government from seeking charges based on other conduct.

b) **Compliance with Other Terms of Agreement:** The government will comply in a timely manner with all of the terms of this plea agreement.

2

3) **Potential Maximum Penalties:** The defendant understands that the Court can impose the following maximum penalties for the offense(s) to which the defendant agrees to plead guilty and may be required to impose mandatory minimum terms of imprisonment, all as set out below:

   a) **Maximum term of imprisonment:** 20 years, pursuant to 18 U.S.C. § 2252A(b)(1).

   b) **Mandatory minimum term of imprisonment:** 5 years, pursuant to 18 U.S.C. § 2252A(b)(1).

   c) **Maximum fine:** $250,000, pursuant to 18 U.S.C. § 3571.

   d) **Supervised release term:** In addition to imposing any other penalty, the sentencing court must require the defendant to serve a term of supervised release between 5 years and life, to begin after imprisonment. *See* 18 U.S.C. § 3583(k). A violation of the conditions of supervised release during that time period may result in the defendant being sentenced to an additional term of imprisonment of up to 3 years, except in the circumstance described in paragraph 3(e) below, where a term of at least 5 years imprisonment on a violation of supervised release is required by statute.

   e) **Required Registration for Sex Offenders:** Under the Sex Offender Registration and Notification Act, the defendant, as a result of the conviction in this case, must register as a sex offender, and keep the registration current, in each jurisdiction where the defendant resides, where the defendant is an employee, and where the defendant is a student. For initial registration purposes, the defendant also must register in New York as a result of this conviction, even if the defendant resides in a different jurisdiction. A sex offender who knowingly fails to register or update a required registration may be subject to prosecution under 18 U.S.C. § 2250, and face a penalty

of up to ten years imprisonment.  Further, if the defendant, while on supervised release, commits any criminal offense under chapter 109A, 110, or 117, or section 1201 or 1591, of Title 18 for which imprisonment for a term longer than 1 year can be imposed, the court will revoke the term of supervised release and require the defendant to serve a term of imprisonment of not less than 5 years on the violation.

f) **Other adverse consequences**:  Other adverse consequences may result from the defendant's guilty plea as further described in paragraph F below.

4) **Elements of Offense(s):**  The defendant understands that the following are the elements of the offense(s) to which the defendant agrees to plead guilty.  The defendant admits that the defendant's conduct satisfies each and every one of these elements.

a) First:    The defendant knowingly received child pornography (that is, visual depictions of a minor engaging in sexually explicit conduct); and

b) Second:    That such child pornography was received using a means and facility of interstate and foreign commerce, or transported in and affecting such commerce by any means, including by computer.

5) **Factual Basis for Guilty Plea:**  The defendant admits the following facts, that those facts demonstrate the defendant's guilt for the offense(s) to which the defendant is pleading guilty, and that there are no facts establishing a viable defense to that offense:

a)  MICHAEL LOMBARDO was a musician and performer who had a following of female teenage fans on YouTube, a video-sharing website on which users can upload, view and share videos.  LOMBARDO communicated with his fans via the Internet and through text messaging.  In December 2011, FBI agents received information that LOMBARDO had made arrangements to meet up with a teenage female fan from Indiana, hereinafter referred to as V-1 (15 years old).  V-1 travelled to New York

4

with her two friends, V-2 (17 years old, from Ohio) and V-3 (17 years old, from Pennsylvania) and their plans included meeting up with LOMBARDO. Each of the three girls, once interviewed, admitted to sending sexually explicit images and videos of themselves, that is images of child pornography, to LOMBARDO, at his request, and acknowledged receiving sexually explicit images from LOMBARDO, who resides in the Northern District of New York.

b) V-1 began corresponding with LOMBARDO in or about 2010, when she was 14 years old via text messages and use of the Internet. V-1 admitted that in the spring of 2011, at LOMBARDO's request, she sent nude images and videos of herself to LOMBARDO via the Internet by using the built-in webcam on her computer and Skype. V-1 indicated that LOMBARDO would tell her what to do, including stripping and masturbating, and she would send images and videos of her doing same to LOMBARDO.

c) On December 30, 2011, a search warrant was executed at the residence of LOMBARDO and several pieces of electronic media were recovered including an ASUS "EEE" laptop computer, FCC Number: MCQE0SNE785 belonging to LOMBARDO. The recovered media was forensically examined, and a video of V-1 was located that depicted sexually explicit conduct. The video was 51 seconds in length and depicted V-1 sitting fully nude on a bed with her legs spread apart. The focal point of the video was on V-1's exposed vagina. V-1 subsequently inserted her finger into her vagina. This video was sent to LOMBARDO by V-1, at his request, and received by LOMBARDO using a means and facility of interstate or foreign commerce, that is by a computer connected to the internet.

d) Agents interviewed a 16 year old female from Rome, New York (hereinafter V-4) who stated that she met LOMBARDO because he worked at her school.  V-4 stated that she sent LOMBARDO picture text messages of images of sexually explicit conduct of herself from February to December 2011, when she was 15 and 16 years old.  Pursuant to a search warrant, LOMBARDO's Droid cellular telephone, MSN: K566NL2FQZ, was examined.  During the forensic examination of the SD card, an image of V-4 masturbating was located.  Specifically, the image depicted V-4 lying naked on her back with her legs spread apart on a bed.  V-4 fondled her vagina with her hand.  V-4 stated she sent the image to LOMBARDO, as his request, using a means and facility of interstate commerce, that is, via cellular telephone.

e) Agents interviewed V-5, who was sixteen years old when she began communicating with LOMBARDO (then age 21) in October 2009, via ichat.  V-5 sent images and videos of sexually explicit conduct of herself to LOMBARDO, and he sent sexually explicit images of himself to V-5, including images of him masturbating.  On September 10, 2010, the following instant messaging conversation occurred between Lombardo and V-5:

| | |
|---|---|
| Lombardo: | i hope you clear out your photobooth |
| V-5: | no one looks at it |
| Lombardo: | I think you should delete them anyway |
| V-5: | why? |
| Lombardo: | cause I'd feel better. |
| Lombardo: | or at least the chat logs |
| V-5: | Some of them I do.  But either way, I don't want you to go to jail either. |
| Lombardo: | thanks |
| V-5: | I like you too much to try to get you arrested |
| V-5: | And I _AM_ almost 18.. then you won't have to worry about it |
| Lombardo: | lol |
| Lombardo: | until then. |

| | |
|---|---|
| V-5: | haha ok I take it back about missing when you were worried about it |
| V-5: | and at least you aren't worried about me thinking you were "some perv" anymore |
| V-5: | actually, wait...which photo booth pictures did you want me to delete?  The ones I sent you or...the ones you sent me? |
| Lombardo: | well like |
| Lombardo: | both |
| Lombardo: | but especially me |
| V-5: | oh like you don't keep what I send? |
| Lombardo: | not usually |
| V-5 | *raises eyebrow |
| Lombardo: | that's like 5 years in federal prison and sex offender registration |
| Lombardo: | until you're 18. Lol |
| V-5: | you once sent some back as reference to the angle you thought my boobs look best at.  you've kept them |
| Lombardo: | some |
| V-5: | also you once (later) said it was only illegal if we were actually doing stuff together |
| V-5: | (which is actuallly not true because at 16 in ohio that wouldn't have been) |
| Lombardo: | well. child porn is bad. |
| V-5: | yea, I know that |
| V-5: | as in corruption of a minor, no? |
| Lombardo: | haha |
| Lombardo: | as in big jail time |

f) Agents interviewed V-6, who was fifteen years old when she began communicating with LOMBARDO and sending explicit videos and images of herself to LOMBARDO via the internet, that is, a means and facility of interstate commerce.

g) On November 15, 2010, V-6, then 15 years old, and LOMBARDO, then 22 years old engaged in video chat via Skype.  During the course of the video chat, LOMBARDO created a screen capture of the video of V-6 that he saved as an image.  In the screen capture image, V-6 is bending at the waist with her anus and vagina exposed.  Inset is a video image of LOMBARDO.  A chat log is also observed that recorded the typed conversation between LOMBARDO and V-6 during the video chat.  LOMBARDO

also saved a second screen capture image that depicted V-6 inserting a hairbrush into her anus. The inset picture shows LOMBARDO naked and masturbating. The accompanying chat log is as follows:

| | |
|---|---|
| Lombardo: | trace around your tits, then down your tummy, down your inner thigh |
| Lombardo: | exactly…lick it again then lightly press the handle against your pussy lips down again, around your asshole very lightly, back up, tease your clit with hit [sic] again, only you're gonna press it into your asshole this time. |

h) Forensic analysis was performed by an FBI CART examiner and 10 videos of child pornography and 63 image files of child pornography were located on the submitted electronic media, including depictions involving sadistic or masochistic conduct or other depictions of violence.

## 6) <u>Sentencing Stipulations</u>:

a) The parties stipulate that based upon the conduct committed by the defendant with V-1, V-2, V-3, V-4, V-5, and V-6 (and his admissions thereto), as set forth above, establish that the defendant caused each of the six victims to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct and transmit a visual depiction of such conduct, and as such the cross reference in U.S.S.G. §2G2.2 (c)(1) applies, and the defendant's offense level should be calculated under U.S.S.G. §2G2.1, and accordingly his base offense level is 32.

b) The parties further stipulate that the following Specific Offense Characteristics, under U.S.S.G. §2G2.1(b), apply:

(1) The offense involved a minor who had attained the age of twelve years but not attained the age of sixteen years, resulting in a 2-level increase under U.S.S.G. §2G2.1(b)(1)(B);

8

(2) The offense involved the commission of a sexual act or sexual contact, resulting in a 2-level increase under U.S.S.G. §2G2.1(b)(2)(B);

(3) The offense involved material that portrays sadistic or masochistic conduct or other depictions of violence, resulting in a 4-level increase under U.S.S.G. §2G2.1(b)(4); and

(4) The defendant used a computer or interactive computer service to persuade, induce, and entice a minor to engage in sexually explicit conduct, or to otherwise solicit participation by a minor in such conduct, resulting in a 2-level increase under U.S.S.G. §2G2.1(b)(6)(B).

c) The government will recommend a 2-level downward adjustment to the applicable federal sentencing guidelines offense level pursuant to U.S.S.G. §3E1.1(a) if, (i) through the time of sentencing, the government is convinced that the defendant has demonstrated "acceptance of responsibility" for the offense(s) to which the defendant is pleading guilty; and (ii) the government does not determine that the defendant, after signing this agreement, committed any other federal, state, or local crimes, or engaged in conduct that constitutes "obstruction of justice," as defined in U.S.S.G. §3C1.1.

d) The government will move for a 1-level downward adjustment to the applicable federal sentencing guidelines offense level pursuant to U.S.S.G. §3E1.1(b) if the government is convinced that the defendant has accepted responsibility within the meaning of U.S.S.G. §3E1.1(a) and further assisted authorities in the investigation or prosecution of the defendant's own misconduct by timely notifying authorities of the defendant's intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, and the defendant otherwise qualifies for such adjustment by

having a combined offense level of 16 before receipt of any acceptance of responsibility adjustment under U.S.S.G. §3E1.1(a).

7) **Waiver of Rights to Appeal and Collateral Attack:**    The defendant waives (gives up) any and all rights, including those conferred by 18 U.S.C. § 3742 and/or 28 U.S.C. §§ 2241 and 2255, to appeal and/or to collaterally attack:

    a)  The conviction(s) resulting from the defendant's guilty plea;

    b)  Any sentence to a term of imprisonment of 240 months or less;

    c)  Any sentence to a fine within the maximum permitted by law;

    d)  Any sentence to a term of supervised release within the maximum permitted by law;

    e)  Any order of forfeiture or restitution imposed by the Court that is consistent with governing law and is not contrary to the terms of this agreement.

Nothing in this appeal waiver is meant to be or should be construed as a representation of or agreement concerning the appropriate sentence in this case.

_____

A.  **Right to Counsel:** The defendant has a right to assistance of counsel in connection with settlement of this case and understands that right.    Defense counsel has advised the defendant of nature of the charges to which the defendant is agreeing to plead guilty and the range of possible sentences.

B.  **Waiver of Trial-Related Rights:** The defendant has the following additional constitutional rights in connection with the charges in this case: (i) to be presumed innocent until proven guilty beyond a reasonable doubt; (ii) to plead not guilty; (iii) to trial by jury; (iv) to confront, cross-examine, and compel the attendance of witnesses at trial; (v) to present defense evidence; and (vi) to remain silent and be protected against

compelled self-incrimination.  The defendant understands that by pleading guilty, the defendant waives (gives up) these rights.

C.  **Court Not Bound by Plea Agreement**: This plea agreement is made pursuant to Rule 11(c)(1)(A) of the Federal Rules of Criminal Procedure.  The Court is neither a party to, nor bound by this Plea Agreement.  The Court may accept or reject this Plea Agreement or defer a decision until it has considered the Presentence Investigation Report prepared by the United States Probation Office.  If the Court rejects the provisions of this agreement permitting the defendant to plead guilty to certain charges in satisfaction of other charges, the Court will permit the defendant to withdraw the plea of guilty before sentencing, pursuant to Fed. R. Crim. P. 11(c)(5) & (d).

D.  **Court Not Bound by Agreed-Upon Recommendations, Stipulations, and Requests**: If this agreement contains any provisions under Fed. R. Crim. P. 11(c)(1)(B) by which the government agrees to recommend, stipulates, or agrees not to oppose the defendant's request, that a particular sentence or sentencing range is appropriate or that a particular provision of the federal sentencing guidelines, or a policy statement, or sentencing factor does or does not apply, such a recommendation, stipulation, or request does not bind the Court, which may make independent factual findings by a preponderance of the evidence and may reject such recommendations, requests, and stipulations between the parties.  If the Court rejects one or more recommendations, stipulations, or requests, the defendant is not entitled to withdraw the defendant's plea of guilty and is not released from the obligations described in this agreement.  Under such circumstances, the government reserves the right to support and defend, in connection with any post-sentencing proceedings, any decision the Court may make with regard to the defendant's sentence,

whether or not such decision is consistent with the government's recommendations, stipulations, or requests set out in this agreement.

E. **Sentencing:**

    a. **Maximum terms of imprisonment**: The defendant understands that the Court has discretion to impose a sentence within the statutory maximum sentence(s) set out in this agreement. If the defendant is pleading guilty to multiple charges, the Court may be required by law to have the sentences of imprisonment on the convictions resulting from those charges run consecutively to each other. Otherwise, the Court has discretion to have sentences of imprisonment run concurrently or consecutively. *See* 18 U.S.C. § 3584.

    b. **Mandatory minimum terms of imprisonment:** If specified in this agreement, the conviction on one or more charges to which the defendant has agreed to plead guilty may require imposition of a mandatory minimum term of imprisonment. In such cases, the court must impose a term of imprisonment no less than the required mandatory minimum term unless an exception to that requirement applies. Such exception may be dependent on a motion by the government.

    c. **Sentencing guidelines:**

        i. The actual sentence to be imposed upon the defendant is within the discretion of the sentencing Court, subject to the statutory maximum and mandatory minimum penalties, as described above, and the provisions of the Sentencing Reform Act and the United States Sentencing Guidelines promulgated thereunder. While the Court is not bound to impose a sentence within the applicable sentencing guidelines range, it must take

into account the sentencing guidelines, along with the other factors set forth in 18 U.S.C. § 3553(a).

ii. Any estimate of the defendant's offense level, criminal history category, and sentencing guidelines range provided before sentencing is preliminary and is not binding on the parties to this agreement, the Probation Office, or the Court.    Until the Probation Office has fully investigated the defendant's criminal history, it is not possible to predict with certainty the defendant's criminal history category and, in some cases, the defendant's offense level.

iii. Under certain circumstances, the defendant's criminal history may affect the defendant's offense level under the federal sentencing guidelines.  If the presentence investigation reveals that the defendant's criminal history may support an offense level different than an offense level stipulated in this agreement, the parties are not bound by any such stipulation as to the defendant's offense level and may advocate with respect to how the defendant's criminal history affects the offense level.

d. **Factual findings:**  The defendant understands that the sentencing Court may make factual findings with respect to any and all sentencing factors and issues, including those referenced in the United States Sentencing Guidelines, whether or not such factors or issues have been admitted by the defendant or stipulated by the parties.  In making those findings by a preponderance of the evidence, the Court may consider any reliable evidence, including hearsay.    The Defendant

understands that the sentence imposed may be determined based upon such judicial fact-finding.

e. **Use of the Defendant's Statements:** The defendant understands that the sentencing court may consider any statement that the defendant has made or makes in this Plea Agreement, during the guilty plea, to the Probation Office, and at sentencing when imposing sentence.  In addition the government may be able to use the defendant's statements in this agreement and at the guilty plea and at sentencing in any criminal, civil, or administrative proceeding.  For example, if the defendant fails to enter a guilty plea (as required by this agreement) or the defendant's guilty plea is later withdrawn or vacated for any reason other than the Court's rejection of this Plea Agreement under Fed. R. Crim. P. 11(c)(5), the government may introduce the defendant's statements into evidence in any prosecution.  If, however, the Court rejects this Plea Agreement under Fed. R. Crim. P. 11(c)(5), and the defendant withdraws the guilty plea pursuant to Fed. R. Crim. P. 11(d)(2)(A), the government will not be permitted to use any of the defendant's statements in this Plea Agreement.  To the extent that Rule 11(f) of the Federal Rules of Criminal Procedure and/or Rule 410 of the Federal Rules of Evidence are inconsistent with this paragraph, the defendant waives (gives up) any protections under those rules.

f. **Government's Discretion to Recommend a Sentence:**  Unless a stipulation in this agreement explicitly limits the government's discretion with respect to its recommendations at sentencing, this agreement does not prevent the government from urging the sentencing Court to find that a particular offense level, criminal

history category, ground for departure, or guidelines range applies; from recommending a specific sentence within the applicable guidelines range as determined by the Court or as urged by the government; or, if the government deems appropriate, recommending that the Court impose a sentence above the applicable guidelines range.

g. **Sentencing-Related Information:**  The government has the right to advise the sentencing Court and the Probation Office of any information, in aggravation or mitigation of sentencing, whether or not encompassed within the count(s) to which the defendant has agreed to plead guilty, subject only to the limitation described in U.S.S.G. §1B1.8.  No stipulation in this plea agreement limits the obligations of both parties to ensure that the sentencing Court has all information pertinent to its determination of an appropriate sentence.  The parties may provide any factual information relevant to sentencing to the Probation Office and/or to the Court, without limitation, before or after the completion of the Presentence Investigation Report.  The parties agree that the submission of such information shall not be deemed "advocacy" in violation of any stipulation in this plea agreement.

h. **Supervised Release Term and Conditions:** If the defendant is placed on supervised release, under some circumstances, including the defendant's violation of one or more supervised release conditions, the Court may extend the term of supervised release, and may modify, reduce, or enlarge the conditions of such release.

F. **<u>Other Adverse Consequences</u>:** The following are some examples of the adverse consequences of pleading guilty other than the sentence imposed by the Court, along with any judicial order of forfeiture and/or restitution:

    a. Conviction of a felony may result in the loss of civil rights, including, but not limited to, the right to vote and the right to possess firearms.

    b. If the defendant is not a United States citizen, such conviction may result in deportation or removal from the United States, and may bar readmission to the United States if the defendant leaves the country. Under federal law, removal or deportation may be an almost certain consequence of a conviction for a broad range of federal offenses, including, but not limited to, aggravated felonies, as defined in 8 U.S.C. § 1101(a)(43), and crimes of moral turpitude, which includes crimes involving fraud. Removal and other immigration consequences are the subject of a separate proceeding. No one, including the defendant's attorney and the Court, can predict with certainty the effect of the conviction resulting from this agreement on the defendant's immigration status. The defendant understands this uncertainty and nonetheless wishes to plead guilty regardless of any immigration consequences that the guilty plea may entail, even if the consequence is the defendant's automatic removal from the United States.

    c. A felony conviction may adversely affect the defendant's ability to hold certain professional licenses and may impair the defendant's ability to do business with federal, state, and local governments or to receive benefits from such governments.

There may be other adverse consequences as well, some of them unforeseeable. It may be difficult or impossible to predict all of the adverse consequences of the defendant's guilty plea. The defendant agrees that any resulting adverse consequences, whether or not foreseen or foreseeable, will not provide a basis for withdrawing from the guilty plea described in this agreement or otherwise challenging the resulting conviction and sentence.

G. **Restitution:** Independent of any agreement to pay restitution, and whether there is any such agreement, the sentencing Court may be required to order that the defendant pay restitution to any victim of the offense(s) of conviction under the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A. In addition, the sentencing Court may have the authority to order that the defendant pay restitution to any victim of the offense(s) of conviction pursuant to 18 U.S.C. §§ 3663 & 3664.

H. **Forfeiture:** If the defendant has agreed to forfeiture of assets, the defendant agrees to the following terms and conditions:

    a.  The defendant hereby forfeits, to the United States, all right, title, and interest of any nature in any and all assets that are subject to forfeiture, including substitute assets, as set forth above, whether those assets are in the possession or control of the defendant, a nominee, or some other third party.

    b.  The defendant consents to the entry of an order of forfeiture of the assets described above.

    c.  The defendant is aware that pursuant to Rule 32.2(b)(4)(A) of the Federal Rules of Criminal Procedure, a preliminary order of forfeiture becomes final as to a given defendant at sentencing or at any time before sentencing if the defendant

consents.  The defendant consents that the preliminary order of forfeiture in this case shall become final as to the defendant before sentencing, as of the date the preliminary order of forfeiture is entered by the Court.   The defendant understands that the government, upon entry of the preliminary order of forfeiture, will address any potential third party claims pursuant to Rule 32.2(c), and seek to finalize forfeiture.

d.  Forfeiture of the defendant's assets will not satisfy all, or any portion of, a fine, restitution, or other monetary penalty that the Court may impose upon the defendant in addition to forfeiture.  Satisfaction of all, or any portion of, any restitution, fine, or other penalty that the Court may impose upon the defendant in addition to forfeiture will not satisfy all, or any portion of, any forfeiture judgment ordered by the Court.

e.  In the event that any successful claim is made, by any third party, to the assets described above, the defendant agrees to forfeit substitute assets equal in value to the assets transferred to any such third party.  The defendant agrees that forfeiture of substitute assets shall not be deemed an alteration of the Defendant's sentence.

f.  The defendant agrees to cooperate with the United States by taking whatever steps are necessary to pass clear title to the United States of any forfeitable assets, including but not limited to, surrendering title; completing any documents or legal proceedings required to transfer assets to the United States; and taking necessary steps to ensure that assets subject to forfeiture are not sold, disbursed, expended, destroyed, damaged, hidden or otherwise made unavailable for forfeiture or removed beyond the jurisdiction of the Court.

g.  The defendant waives the right to a jury trial on the forfeiture of assets.  The defendant waives all constitutional, legal, and equitable defenses to the forfeiture of assets, as provided by this agreement, in any proceeding, including but not limited to any jeopardy defense or claim of double jeopardy or any claim or defense under the Eighth Amendment to the United States Constitution, including any claim of an excessive fine.

h.  The defendant acknowledges that the government may institute civil or administrative proceedings against any or all of the defendant's forfeitable assets, including, but not limited to substitute assets and any forfeitable assets not identified by the defendant, and agrees not to contest any such forfeiture proceedings.

i.  The defendant represents and warrants that the defendant has no direct or indirect interest in any property, real or personal, or other asset subject to forfeiture by virtue of this plea agreement, other than those listed above.

j.  The defendant acknowledges joint and several liability for the amount of any money judgment set forth above.

k.  In the event the government determines that the defendant has breached any condition of this plea agreement, none of the forfeited property shall be returned to the defendant, nor shall the defendant assert any claim to the forfeited property. The defendant shall not reacquire any forfeited property, directly or indirectly, through family members, nominees, friends, or associates.

I.  **Determination of Financial Condition and Payment of Interest and Penalties:**

a.  In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the defendant agrees fully to disclose all assets in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party.

b.  The defendant will promptly submit a complete, accurate, and truthful financial statement to the United States Attorney's Office, in a form it provides and as it directs.

c.  The defendant authorizes the United States Attorney's Office to obtain a credit report on the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

d.  Interest and penalties may accrue, as a matter of law, on any unpaid financial obligation imposed as part of the defendant's sentence, from as early as the date of sentencing.

J.  **Remedies for Breach**:

a.  Should the government determine that the defendant, after the date the defendant has signed this plea agreement, (i) has committed any further crime or violated any condition of release or supervision imposed by the Court (whether or not charged); (ii) has given false, incomplete, or misleading testimony or information; or (iii) has moved to withdraw the defendant's guilty plea for reasons other than those described in this agreement or otherwise has breached any term or condition of this plea agreement or supplemental agreements with the government, the government will have the right, in its sole discretion, to void this agreement, in

whole or in part. In the event of such breach, the defendant will remain obligated to plead guilty and otherwise comply with the terms of this agreement and will not be permitted to withdraw the defendant's guilty plea under this agreement. The defendant will be subject to prosecution for any federal criminal violation of which the government has knowledge, including but not limited to charges that this Office has agreed to dismiss or not to prosecute under this agreement.

b. If the defendant breaches this agreement, the government will have the following remedies, among others, available to it:

    i. To bring prosecution for any federal criminal offenses dismissed or not prosecuted under this agreement. The defendant waives (gives up) any defense or objection to the commencement of any such prosecution that is not time-barred by the applicable statute of limitations as of the date on which the defendant signed this plea agreement, notwithstanding the expiration of the statute of limitations between the signing of the agreement and the commencement of any such prosecution.

    ii. In connection with any such prosecution, any information, statement, and testimony provided by the defendant, and all leads derived therefrom, may be used against the defendant, without limitation and without regard to any rights the defendant may have under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410.

    iii. To utilize any information, statement, or testimony provided by the defendant in any proceeding, including at sentencing, notwithstanding U.S.S.G. §1B1.8;

    iv.  To advocate if, and how, any particular adjustment or specific offense characteristic affects the applicable Sentencing Guidelines range without regard to any contrary stipulations contained in this agreement;

    v.  To refrain from making any sentencing-related motion favorable to the defendant without regard to any provision in this agreement obligating the government to consider making or make such motion upon fulfillment of certain conditions;

    vi.  To urge the sentencing Court to take the defendant's breach into account when imposing sentence;

    vii.  To recommend any sentence the government deems appropriate, even if such recommendation is at odds with any stipulation in this agreement.

K. **<u>Limitations</u>**: This agreement is between the United States Attorney's Office for the Northern District of New York and the defendant. References to "the government" in this agreement refer only to that Office. This agreement does not bind any other federal, state, or local prosecuting authorities. Furthermore, this agreement does not prohibit the United States, any agency thereof, or any third party from initiating or prosecuting any civil or administrative proceedings directly or indirectly involving the defendant, including, but not limited to, proceedings by the Internal Revenue Service relating to potential civil tax liability, proceedings relating to the forfeiture of assets, and proceedings by the Department of Homeland Security, Bureau of Citizenship and Immigration Services relating to the immigration status of the defendant.

L. **<u>Agreement Must be Signed; Modifications Must be Written or on the Record</u>**: This agreement, to become effective, must be signed by all of the parties listed below. No

promises, agreements, terms, or conditions other than those set forth in this plea agreement will be effective unless memorialized in writing and signed by all parties or confirmed on the record before the Court.

M. **Agreement to Plead Guilty Voluntary:** The defendant acknowledges reading each of the provisions of this plea agreement with the assistance of counsel and understands its provisions. The defendant further acknowledges that the defendant's agreement to plead guilty is voluntary and did not result from any force, threat, or promises (other than the promises in this plea agreement and any written supplemental agreements or amendments).

RICHARD S. HARTUNIAN
United States Attorney
Northern District of New York

Tamara B. Thomson
Assistant United States Attorney
Bar Roll No. 515310

Date 9/18/13

MICHAEL LOMBARDO
Defendant

Date 9/18/13

Don Kinsella
Attorney for Defendant
Bar Roll No. 103148

Date 9/18/13